## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **YVETTE MITCHELL,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE NO.** |
| **v.** | : | **1:09-CV-02026-AJB** |
| | : | |
| **MICHAEL J. ASTRUE,** | : | |
| *Commissioner of Social* | : | |
| *Security Administration*, | : | |
| | : | |
| **Defendant.** | : | |

## ORDER[1] AND MEMORANDUM OPINION

Plaintiff, Yvette Mitchell, ("Plaintiff"), brought this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for disability insurance benefits ("DIB").[2]  Because Plaintiff alleged an onset date of April 20, 2003, and was last

---

[1]    The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73.  [*See* Dkt. Entries dated 7/27/2009].  Therefore, this Order constitutes a final Order of the Court.

[2]    Title II of the Social Security Act provides for federal disability insurance benefits (hereinafter "DIB").  42 U.S.C. § 401 *et seq.*  Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, provides for supplemental security income benefits for the disabled (hereinafter "SSI").  Title XVI claims are not tied to the attainment of a particular period of insurance disability.  *Baxter v. Schweiker*, 538 F. Supp. 343, 350

insured through June 30, 2004, the resolution of Plaintiff's disability application should have been concerned with whether Plaintiff was disabled between April 2003 and June 2004. Unfortunately, the ALJ below and the parties on appeal mostly have treated this case as one for supplemental security benefits, which is not tied to a period of disability. *See* note 2 *supra*. This creates problems for the Court in evaluating Plaintiff's arguments on appeal since many of them are irrelevant to the period that Plaintiff was insured. Ultimately, the Court concludes that Plaintiff has raised a few viable claims of error and therefore **REVERSES AND REMANDS** the Commissioner's final decision for the reason discussed below. This conclusion is, however, much closer than it should have been.

---

(N.D. Ga. 1982). The relevant law and regulations governing the determination of disability under a claim for DIB are identical to those governing the determination under a claim for SSI. *Davis v. Heckler*, 759 F. 2d 432, 435 n.1 (5th Cir. 1985). Under 42 U.S.C. § 1383(c)(3), the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI. In general the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI. Different statutes and regulations, however, apply to each type of claim. Plaintiff has only applied for DIB. Therefore, to the extent that the Court cites to SSI cases, statutes, or regulations, they are equally applicable to Plaintiff's DIB claim.

AO 72A
(Rev.8/8
2)

## I.    PROCEDURAL HISTORY

Plaintiff initially filed an application for DIB on January 18, 2005, alleging disability commencing on April 20, 2003. [*See* Record (hereinafter "R") 11].[3] Plaintiff was insured for DIB through June 30, 2004. [*See* R13, 29, 31]. As a result, Plaintiff was seeking disability benefits only for the period between April 20, 2003, and June 30, 2004. Plaintiff's application was denied initially and on reconsideration. [R18-19]. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). [R22]. An evidentiary hearing was held on August 22, 2008. [R408-34]. Following the hearing, the ALJ issued an unfavorable decision on October 9, 2008. [R11-16]. Plaintiff sought review of the ALJ's decision, and the Appeals Council denied

---

[3]      Plaintiff's application is not in the record. Plaintiff's initial brief indicated that Plaintiff also applied for SSI, citing to pages 11 and 17 of the record, [*see* Doc. 13 at 2], but these pages do not support this assertion. Page 11 is the first page of the ALJ's decision and indicates that Plaintiff "filed an application for a period of disability and disability benefits" and had to "establish disability on or before [June 30, 2004,] to be entitled to a period of disability and disability insurance benefits." [R11]. As for page 17, it shows that Plaintiff only had a Title II claim, *i.e.*, a claim for disability insurance benefits. (*See* Disability Determination and Transmittal at boxes 7-8 in R17). Thus, Plaintiff's citations to the record establish that the case is only a DIB case. Additionally, other administrative records indicated that Plaintiff only applied for disability insurance benefits under Title II of the Act. [*See* R18, 71]. Finally, at oral argument, Plaintiff's counsel conceded that this was a DIB case.

AO 72A
(Rev.8/8
2)

Plaintiff's request for review on April 20, 2009, rendering the ALJ's decision the final decision of the Commissioner.  [R2-5].

Plaintiff then filed a civil action in this Court on July 17, 2009, seeking review of the Commissioner's final decision.  *Yvette Mitchell v. Michael J. Astrue*, Civil Action File No. 1:09-CV-02026-AJB.  [Doc. 2].  The answer and transcript were filed on December 2, 2009.  [Docs. 9-10].  Plaintiff filed her brief on January 12, 2010, [Doc. 13], and the Commissioner filed a response on February 11, 2010, [Doc. 17].  Plaintiff did not file a reply brief.  [*See* Dkt.].  The undersigned held a hearing on April 21, 2010.  [*See* Doc. 19].  The matter is now before the Court upon the administrative record, oral argument, and the parties' pleadings and briefs and is ripe for review pursuant to 42 U.S.C. § 405(g).

## II.    STATEMENT OF FACTS

Since Plaintiff only sought disability insurance benefits under Title II of the Social Security Act, the relevant records relate to the period between her alleged onset date (April 20, 2003) and her date last insured (June 30, 2004).  As a result, the Court only summarizes the record evidence that is relevant to this period of time.

A.     *Medical Evidence*

On May 15, 2001, Plaintiff had an X-ray of her cervical spine because she had a history of neck pain.  The X-ray revealed no "radiographic abnormalities," and showed satisfactory range of motion.  [R128].

After complaining of left hip pain, Plaintiff had an X-ray of her hip on January 28, 2002, which revealed mild degenerative disease of the hip joints bilaterally. [R127].

Plaintiff visited Morehouse Medical Associates ("Morehouse") on March 15, 2003, complaining of sharp lower abdominal pain and "spotting."  [R385].  Plaintiff was assessed with post-menopausal spotting, diabetes, and controlled hypertension. [R385-86].  Plaintiff returned to Morehouse on September 5, 2003, and reported her abdominal pain had resolved and there was no more spotting.  [R384].

Plaintiff went to Morehouse on October 30, 2003, to follow up for her diabetes. [R382].  Plaintiff was assessed with uncontrolled diabetes and hypertension along with a viral infection.  [R383].  A medical note from November 26, 2003, indicated that Plaintiff had (1) diabetes and was to continue on Glucovance since she did not want insulin and (2) hypertension for which she did not want to try other medications. Plaintiff also refused the flu shot.  [R381].

5

Plaintiff was seen at Morehouse on December 12, 2003, to follow up after being admitted to the hospital after her flu infection led to pneumonia. [R380].[4]  Plaintiff returned to Morehouse on January 22, 2004, for the same reason. The medical note was otherwise unremarkable. [R379].

On January 29, 2004, Plaintiff went to Morehouse because of left side pain in her arm and neck, which started after Plaintiff did housework. An examination found tenderness upon palpitation of the left biceps and minimal shoulder joint tenderness. [R378]. Plaintiff returned to Morehouse on February 5, 2004, to follow up following her emergency room visit for an ear infection and strep throat. The medical note is unremarkable. [R376].

Plaintiff visited Morehouse on February 26, 2004, to follow up for her diabetes. The doctor found Plaintiff's diabetes to be "not well controlled." The doctor told Plaintiff to increase her exercise to 30-45 minutes a day, five days per week. [R375].

Plaintiff visited Morehouse on March 25, 2004, and had no complaints. The progress note indicated that Plaintiff was compliant with her medications. Plaintiff was

---

[4]      The hospital records are at pages 398-401 of the medical record. The records note in relevant part that Plaintiff had a history of hypertension and Type 2 diabetes. [R400].

6

assessed with hypertension and Type II diabetes and was told to continue with her medication.  [R374]

On April 8, 2004, Plaintiff complained of chest pain, which she attributed to a new medication she was taking.  Plaintiff was referred to cardiology for evaluation. [R372].  At the referral, Plaintiff was assessed with chest pain, hypertension, and diabetes.  [R370].  Plaintiff had an echocardiogram in April 2004.  The doctor's findings are largely illegible other than that Plaintiff had mild thickening of the mitral valve.  The doctor recommended "SDL prophylaxis."  [R367].

A medical note from May 20, 2004, listed Plaintiff's diagnoses as hypertension, diabetes, and an illegible condition.  [R368].

A May 25, 2004, medical note from Morehouse stated that Plaintiff had controlled hypertension and uncontrolled Type II diabetes.  The doctor added a new medication for Plaintiff's diabetes.  [R366].

Plaintiff had a follow up visit on August 13, 2004, at Morehouse.  Plaintiff had no complaints, but she had left wrist discomfort and swelling.  The medical assessment indicated that Plaintiff had hypertension, which was controlled, but her diabetes was uncontrolled.  [R365].

7

Plaintiff had a colonoscopy on August 26, 2004, which revealed diverticulosis and inflamed internal hemorrhoids. [R346]. Following the colonoscopy, Plaintiff had a follow up visit in which she denied symptoms from the procedure. She stated that she had intermittent hip and leg pain. [R359].

A December 2, 2004, abdominal ultrasound was conducted because Plaintiff had a history of abdominal bloating and pain. The ultrasound revealed an abnormal "echopattern to the liver," which was thought to be the result of "fatty infiltration." [R392].

On May 19, 2005, Dr. John Hassinger, a state agency doctor, completed a physical residual functional capacity assessment. [R324-31]. After reviewing Plaintiff's medical records from 2002, 2003 and 2004, Dr. Hassinger determined that Plaintiff could: (1) occasionally lift and/or carry 50 pounds; (2) frequently lift and/or carry 25 pounds; (3) sit, stand, and/or walk for 6 hours in an 8-hour day; and (4) push or pull without limitation. [R325]. Dr. Hassinger also found that Plaintiff could: (1) never climb a ladder/rope/scaffolds; (2) occasionally balance and climb ramp/stairs; and (3) frequently knee, crouch, stoop, and crawl. [R326]. Finally, Dr. Hassinger stated that Plaintiff's allegations were only partially credible and that "the severity of impact on her functional capacities is not documented." [R329]. It appears that

8

AO 72A
(Rev.8/8
2)

Dr. Hector Manlapas "affirmed" Dr. Hassinger's opinion on March 2, 2006, because the new evidence was after the date last insured.  [R331].

On June 16, 2005, Plaintiff reported having episodic pain for three years in her lower extremities.  The pain had been constant for the past year.  A nerve conduction study was, however "essentially normal" with no evidence to support a diagnosis of "lumbar radiculopathy."  [R229].

On July 10, 2006, Dr. Israel Orija, a treating doctor of Plaintiff's since November 2005, completed a "Physical Capabilities Evaluation" form in which Dr. Orija indicated that the limitations identified in the form had existed at that severity for "3 Yrs." [R132-35].  Dr. Orija determined that during an 8-hour workday, Plaintiff could: (1) sit for 2 hours at one time; (2) sit for a total of 2 hours; (3) stand/walk for 2 hours at one time; and (4) stand/walk for a total of 2 hours.  [R132].  As a result, Dr. Orija concluded that Plaintiff could only work for a total of 4 hours in an 8-hour day.  The doctor also determined that Plaintiff needed "the freedom to rest, recline, or lie down at [her] own discretion throughout the normal workday."  Dr. Orija then found that Plaintiff could: (1) lift and carry 5 pounds on a regular and sustained basis; (2) use feet for repetitive movements; (3) occasionally bend; and (4) continuously reach.  [R133-34].  Dr. Orija stated that Plaintiff could not: (1) repetitively use her hands to grasp, push/pull, or

finely manipulate; (2) squat; (3) climb; and (4) crawl.  [*Id.*].  Dr. Orija indicated that

Plaintiff's medications would interfere with her ability to work because of side effects

from dizzy spells.  [R134].  Dr. Orija stated that Plaintiff's arthritis could be expected

to produce pain that would preclude her from competitive employment.  Dr. Orija

finally noted that these findings were made as a result of Plaintiff's moderate obesity,

her poorly controlled diabetes, and her arthritis in both hips and knees.  [R135].

> B.    *August 22, 2008, Evidentiary Hearing*[5]

ALJ Fred McGrath held an evidentiary hearing for Plaintiff's disability benefits

application on August 22, 2008.  [*See* R410].  Plaintiff testified that she had been

diagnosed with and was suffering from carpal tunnel syndrome for the past seven years,

which caused certain fingers on both hands to lock.  [R411, 414].  Plaintiff stated that

she could not lift over five pounds and had trouble vacuuming because of the carpal

tunnel.  [R412-13].

The vocational expert ("VE") testified that Plaintiff had past relevant work as

(1) a sales clerk, which is light, semi-skilled work, (2) general office clerk, which is

---

[5]    Most of Plaintiff's testimony at the hearing focused on her limitations from her various impairments at the time of the hearing.  [*See* R411-31].  The Court does not summarize this testimony because it is irrelevant given that Plaintiff was only seeking disability for the period between her alleged onset date (April 2003) and her date last insured (June 2004).

10

light, semi-skilled work, (3) clerk, which is sedentary and semi-skilled work, and (4) custodian, which is heavy and unskilled work. [R431]. The VE testified that a hypothetical person with the following characteristics could not perform work: (1) the same age, education, and work background of Plaintiff; (2) the ability to sit 3 hours at a time and the ability to sit, stand and walk for 3 hours in an 8-hour day; (4) the need to rest, recline, or lie down at will during the work day; (5) the ability to occasionally lift ten pounds and frequently lift five pounds; (6) the inability to push, pull, and perform fine manipulation repetitively; and (7) the occasional ability to bend, squat, climb, crawl, and reach. [R432]. The VE also found that a hypothetical individual with the following characteristics could not perform work: (1) Plaintiff's age, education, and work background; (2) the ability to sit and stand for two hours; (3) the need to rest at will; (4) the ability to lift five pounds occasionally; (5) the inability to use hands for repetitive grasping, pulling, pushing, or fine manipulation; (6) the need to elevate legs about heart level several times per day; (7) the ability to occasionally bend; and (8) the inability to squat, climb, or crawl. [R433].

## III.   ALJ'S FINDINGS OF FACT

The ALJ made the following findings of fact and conclusions of law:

11

1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2004.[6]

2.  The claimant has not engaged in substantial gainful activity since April 20, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: diabetes mellitus type 2, hypertension, obesity, degenerative joint disease, myalgia and muscle tenderness of the right arm, bilateral equinous deformity with associated Achilles tendonitis, bilateral plantar fasciitis, bilateral hallux valgus, and bilateral hammer toes (20 CFR 404.1520(c)).

. . .

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

. . .

---

[6]   As the Court emphasizes throughout this opinion, Plaintiff's application for disability benefits was for a period of disability and listed an onset date of April 20, 2003.  [*See* R11].  The ALJ noted this fact at the start of the decision, [R11], and when he determined that Plaintiff was insured through June 30, 2004, [R13].   Given Plaintiff's application, her alleged onset date, and her date last insured, the ALJ's decision should have focused on whether Plaintiff suffered from a disability between April 20, 2003, and June 30, 2004.  The ALJ's decision, however, summarizes evidence and diagnoses from February 2005, October 2006, July 2006, and May 2007.  [R13-14].  As explained below, it is not clear how this evidence from between seven months and three years after the date last insured is relevant to Plaintiff's disability application.

AO 72A
(Rev.8/8
2)

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of light work as defined by 20 CFR 404.1567(b).

. . .

6.    The claimant is capable of performing past relevant work as a sales clerk, general office clerk, clerk, and custodian. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

. . .

7.    The claimant has not been under a disability, as defined in the Social Security Act, from April 20, 2003 through the date of this decision (20 CFR 404.1520(f)).

[R13-16].

The ALJ explained in relevant part that Plaintiff's statements about her symptoms were not credible to the extent that they were inconsistent with the residual functional capacity assessment. The ALJ then determined that Plaintiff's residual functional capacity ("RFC") was for a limited range of light work based on the assessment by Dr. "Mbaqaia"[7] that Plaintiff could sit, stand, and walk for 6 hours in an

_____

[7]    The ALJ decision refers to "Dr. Mbaqaia," but the parties appear to agree that this doctor's name is spelled M-B-A-E-Z-U-E. (The Court notes that the ALJ's misspelling is understandable because the doctor's printed name is not clear. [*See* R102, 106]) As a result, this Court's opinion refers to the doctor as Dr. Mbaezue.

13

8 hour day.  The ALJ discounted Drs. "Mbaqaia's" and Orija's opinions that Plaintiff was incapable of performing full-time work because their limitations contradicted this finding.  [R15].  Finally, the ALJ determined that Plaintiff could perform her past work as a sales clerk, general office clerk, and clerk based on the vocational expert's testimony.  [R16].

## IV.   STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.   42 U.S.C. §§ 423(d)(2)-(3).

14

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner.  The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. § 404.1512(a).  The Commissioner uses a five-step sequential process to determine whether the claimant has met his burden of proving disability. *See* 20 C.F.R. § 404.1520(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  The claimant must prove at step one that he is not undertaking substantial gainful activity.  *See* 20 C.F.R. § 404.1520(b). At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments which significantly limits his ability to perform basic work-related activities.  *See* 20 C.F.R. § 404.1520(c).  At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education and work experience.  *See* 20 C.F.R. § 404.1520(d).  At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that the impairment prevents performance of past relevant work.  *See* 20 C.F.R. § 404.1520(e). At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education and past work experience to determine whether the

15

claimant can perform other work besides past relevant work. *See* 20 C.F.R. § 404.1520(f). The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists. *Doughty*, 245 F.3d at 1278 n.2.

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. § 404.1520(a). Despite the shifting of burdens at step five, the overall burden rests upon the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy. *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

## V.   SCOPE OF JUDICIAL REVIEW

The scope of judicial review of a denial of Social Security benefits by the Commissioner is limited. Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. The findings of the Commissioner are

16

conclusive if they are supported by substantial evidence and the Commissioner applies the correct legal standards.  *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  "Substantial evidence" means more than a scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239.  "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  In contrast, review of the ALJ's application of legal principles is plenary.  *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## VI.   CLAIMS OF ERROR

Plaintiff asserts that the Commissioner's final decision should be remanded because of the following 11 alleged errors:

17

(1) the ALJ misinterpreted and selectively discounted the assessments of Dr. Mbaezue, a treating physician;

(2) the ALJ erred in discounting the assessments of Dr. Orija, another treating doctor;

(3) the ALJ erred in formulating Plaintiff's RFC;

(4) the ALJ erred in determining that Plaintiff's past work as a sales clerk and general office clerk constituted past relevant work;

(5) the ALJ erred by failing to ask the VE for the DOT codes for Plaintiff's past relevant work and in failing to ask whether the VE's testimony was consistent with the DOT;

(6) the ALJ erred by failing to address the Commissioner's obesity ruling at Social Security Ruling ("SSR") 02-1p "at step 5 of the sequential evaluation process";[8]

(7) the ALJ erred by failing to find diabetic neuropathy, sinusitis and depression as severe impairments at Step 2;

(8) the ALJ erred in fairly and fully developing the record by subpoenaing the medical records from Dr. Orija and the Atlanta Medical Center;

(9) the ALJ failed to fully and fairly develop the record by fully explaining Plaintiff's past relevant work as sales clerk, general office clerk, clerk, and custodian;

(10) the ALJ erred by failing to state the weight given to the opinion of the state agency physician, Dr. Hassinger; and

---

[8]      This is not a Step 5 case.

18

(11) the ALJ erred in failing to make a credibility determination as to Plaintiff's testimony.[9]

[Doc. 13 at 1-2].  As the Commissioner conceded at oral argument and as discussed below, the ALJ's decision has "issues," but this does not mean that Plaintiff is entitled to prevail on all claims of errors because, as discussed below, many of her arguments raise harmless errors and/or relate to issues that are ultimately irrelevant to her disability application.

First, Plaintiff abandoned at oral argument her claims of error relating to (1) obesity and SSR 02-1p, (2) the failure to find diabetic neuropathy, sinusitis, and depression as severe, and (3) the failure to state the weight given to Dr. Hassinger.[10] Therefore, the Court does not consider these issues.

––––––––––––––––––––

[9]       Although Plaintiff's strategy of raising every claim of error possible has worked in this case, the Court does not condone this strategy because as this case demonstrates the real problem with this case - - the ALJ's failure to confine his disability finding to the period between the onset date and the date last insured - - was not actually addressed.  A thoughtful criticism of the ALJ's decision is preferred over the strategy of identifying numerous  issues, many of which are simply irrelevant.

[10]      The undersigned notes that Dr. Hassinger's opinion is actually relevant to Plaintiff's disability benefits application because he considered Plaintiff's limitations during the period that she was insured.  As such, Dr. Hassinger and Dr. Manlaps who adopted Dr. Hassinger's opinion are two of the few individuals who actually examined the proper evidence in Plaintiff's case.

AO 72A
(Rev.8/8
2)

Second, Plaintiff cannot prevail based on her argument that the ALJ erred in his past relevant work findings because the error is harmless. Plaintiff argues that her past work as a sales clerk and a general office clerk do not constitute past relevant work because she did not earn enough money in these jobs. [Doc. 13 at 12]. The Commissioner appears to concede that this was error, but asserts that the error was harmless given the ALJ's finding that Plaintiff's past relevant work also included community service clerk.   [Doc. 17 at 13-14].

A claimant has the burden of showing that certain work experience is not past relevant work. *Barnes*, 932 F.2d at 1359. Past relevant work is "work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [claimant] to learn to do it."   20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). Thus, past relevant work exists when three conditions are met: (1) the work was recent, *i.e.*, it occurred within 15 years; (2) the work was of sufficient duration, *i.e.*, the claimant had enough time to learn the skills needed for average performance in the job; and (3) the work constituted substantial gainful activity. SSR 82-62; *see also* 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).  Work is substantial if the work activity "involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a).  Work is gainful if it is done for pay or profit.

20

*Id.* §§ 404.1572(b), 416.972(b).  Generally, monthly earnings will not result in a finding of substantial gainful activity when a claimant earned less than or equal to $500 per month between January 1990 and June 1999.  20 C.F.R. §§ 404.1574(b)(2)(i).

Although the ALJ may have erred in determining that Plaintiff's sales clerk and general office clerk jobs constituted past relevant work,[11] he did not err in finding that the "clerk" position was past relevant work.  [*See* R16].  Initially, the Court notes that the Commissioner improperly argues that this "clerk" position referred to Plaintiff's job in 1992 as a community service clerk, [*see* Doc. 17 at 14-15], because the "clerk" position referred to Plaintiff's work at the Housing Authority of the City of Atlanta. [*See* R16 (relying on the VE testimony as to past relevant work); R431 (stating that Plaintiff's work from September 1997 to June 1999 with the Atlanta Housing Authority was "work as a clerk")].

Although the Commissioner raises arguments about the wrong job, the Court still agrees that the ALJ's error was harmless when the Atlanta Housing Authority clerk position is considered.  First, the housing authority clerk job was recent in that Plaintiff worked in this position from September 1997- June 1999, [*see* R36, 55]. which was

---

[11]     The Court additionally notes that the ALJ's RFC of a limited range of light work, [R14], conflicts with his finding that Plaintiff could perform her past work of a custodian, which he noted was "heavy, unskilled work," [R16].

within 15 years of Plaintiff's April 2003 disability application. Second, Plaintiff's one and a half year tenure at the job shows that Plaintiff performed the job long enough to learn the skills necessary to perform the job. Third, the work was gainful because Plaintiff earned $2,286.35 for her four months of work in 1997 (*i.e.*, $571 per month) and $7,756.19 for her 12 months of work in 1998 (*i.e.*, $646 per month in 1998). [*See* R34]. Therefore, even if the ALJ erred in concluding that Plaintiff's sales clerk and general office clerk jobs were past relevant work, the error was harmless because Plaintiff's clerk position at the Atlanta Housing authority constituted past relevant work. As a result, Plaintiff is not entitled to remand on this issue.

Third, Plaintiff is not entitled to remand based on her arguments that the ALJ should have obtained the DOT codes for the past relevant work from the VE and should have asked the VE whether her testimony was consistent with the DOT. Plaintiff cites to *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) and SSR 00-4p for the proposition that the ALJ needed to obtain the DOT codes from the VE. [Doc. 15 at 13]. Neither authority supports this argument. The *Brown* case does not mention the DOT, so it is not clear how this case supports Plaintiff's argument. As for *Brown*'s discussion about developing the record, the Court finds that this general discussion does not provide a basis for requiring the ALJ to obtain DOT codes from the VE. Unlike *Brown*,

AO 72A
(Rev.8/8
2)

Social Security Ruling 00-4p addresses the DOT, but the Court has found nothing in SSR 00-4p that requires the ALJ to inquire about specific DOT codes.  Instead, the Ruling addresses how the ALJ should resolve conflicts between the VE testimony and the DOT.   Finally, courts have determined that the ALJ does not need to obtain the DOT codes from the VE.  *See Hermann v. Astrue*, No. 07-cv-6914, 2010 WL 356233, *17 (N.D. Ill. Feb. 1, 2010) (rejecting argument that the "ALJ failed to comply with SSR 00-4p because she failed to obtain the [DOT] code numbers for the jobs the VE" identified); *Williams v. Astrue*, No. 08-cv-13470, 2009 WL 2840497, *11 (E.D. Mich. July 28, 2009) (R&R *adopted by* 2009 WL 2840499 (Aug. 31, 2009)) (rejecting argument that the "ALJ should have required the VE to provide the DOT codes associated with each of the jobs she listed"); *Squires v. Astrue*, No. 07-5096, 2008 WL 1776941, *8 (W.D. Ark. Mar. 24, 2008) (R&R) (rejecting argument that ALJ committed reversible error when relying on VE testimony when VE failed to assign DOT code to past relevant work); *cf. Craft v. Astrue*, 539 F.3d 668, 680-81 (7th Cir. 2008) (rejecting argument that VE was required to provide the DOT codes where counsel obliquely requested them at administrative hearing); *Patterson v. Comm'r of Soc. Sec.*, No. 1:09-cv-413, 2010 WL 774678, *3 (W.D. Mich. Mar. 1, 2010) ("The

23

absence of specific DOT code numbers does not undermine the substantial evidence supporting the ALJ's decision.").

Although Plaintiff's argument relating to the DOT codes is unpersuasive, the Court finds the argument about inquiring about a conflict between the VE testimony and the DOT is stronger, but ultimately unpersuasive. Social Security Ruling 00-4p explicitly states that "[w]hen a VE . . . provides evidence about the requirements of a job . . ., the [ALJ] has an *affirmative* responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT." SSR 00-4p (emphasis added). Thus, if SSR 00-4p were binding authority, Plaintiff might prevail on this argument because the ALJ never inquired about a conflict. [*See* R431-32]. The Eleventh Circuit has held, however, that "when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT." *Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999). Although SSR 00-4p post-dates *Jones*, the Eleventh Circuit has explicitly held in an unpublished decision that the *Jones* case remains binding law in this Circuit because Social Security Rulings do not bind courts and do not have the force of law. *See Miller v. Comm'r of Soc. Sec.*, 246 Fed. Appx. 660, 661-62 (11th Cir.

24

2007).[12]   As a result, Eleventh Circuit "precedent establishes that the testimony of a vocational expert 'trumps' an inconsistent provision of the DOT in this Circuit."   *Id.* at 662.   Thus, the ALJ's failure to inquire into a conflict is harmless because the VE testimony would control even if a conflict existed under the Eleventh Circuit's *Jones* decision.

Fourth, the undersigned concludes that Plaintiff's arguments about the ALJ erring in subpoenaing the records of Dr. Orija and the Atlanta Medical Center are unpersuasive and are not relevant to the issue raised in Plaintiff's disability application, namely whether Plaintiff suffered from a disability between April 2003 and June 2004. The case law is clear that "the ALJ has a duty to develop the record fully and fairly." *See, e.g.*, *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999); *see also* 20 C.F.R. § 404.1512(d).   The regulations provide that the Commissioner will develop the "complete medical history for at least the 12 months preceding the month in which [the plaintiff] file[s] [her] application unless there is a reason to believe that development of an earlier period is necessary." 40 C.F.R. § 404.1512(d). The ALJ, if necessary, will

---

[12]     The Court recognizes that "[u]npublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007).   The Court follows the *Miller* decision because its analysis is persuasive and is based on and consistent with a published Eleventh Circuit opinion.

AO 72A
(Rev.8/8
2)

develop the medical history for the 12-month period prior to the month the plaintiff was last insured. *Id.* § 404.1512(d)(2). A case will be remanded for failure to develop the record only if the plaintiff shows prejudice. *See Robinson v. Astrue*, No. 09-12472, 2010 WL 582617, *2 (11th Cir. Feb. 19, 2010) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)[13]).

The ALJ did not err in failing to subpoena the records of Dr. Orija. Plaintiff cannot show prejudice for this failure to obtain these records. Although she asserts that the records are "highly probative," [Doc. 13 at 19], the Court fails to see how they could be probative in any way. Dr. Orija did not begin treating Plaintiff until November 2005, [*see* R135], over a year after Plaintiff's date last insured. These records are therefore irrelevant to Plaintiff's claim, so Plaintiff cannot establish prejudice.

_____

[13]     The undersigned notes that the published Eleventh Circuit cases that have required a showing of prejudice have been cases in which the plaintiff was unrepresented at the ALJ hearing. *See Graham v. Apfel*, 129 F.3d 1420, 1421 (11th Cir. 1997) (noting that claimant appeared at ALJ hearing without an attorney); *Brown*, 44 F.3d at 932 (noting that claimant appeared *pro se* at ALJ hearing); *Kelley v. Heckler*, 761 F.2d 1538, 1539 (11th Cir. 1985) (noting that claimant waived right to counsel at the ALJ hearing). Therefore, if an unrepresented claimant needs to show prejudice to be entitled to a remand, then a represented claimant would also necessarily need to demonstrate prejudice for failure to develop the record.

AO 72A
(Rev.8/8
2)

Also, Plaintiff cannot show prejudice because the Commissioner's own regulation - - 20 C.F.R. § 404.1512(d) - - did not require the ALJ to obtain these document. Given that Dr. Orija started treating Plaintiff in November 2005, his records are not part of Plaintiff's medical history in the period prior to her date last insured or the period prior to her application, so the ALJ was not under any regulatory requirement to obtain these records. The ALJ therefore did not fail to fairly develop Plaintiff's medical record by failing to subpoena Dr. Orija's records.

The Court similarly rejects Plaintiff's argument concerning the Atlanta Medical Center records. Plaintiff has not attempted to show why she was prejudiced by the ALJ's failure to subpoena these records. [*See* Doc. 13 at 19]. Also, it does not appear that she could show prejudice even if she tried because Plaintiff has not shown that these records relate to the relevant time period for Plaintiff's disability application. As a result, the Court finds that Plaintiff's arguments about the ALJ's failure to subpoena documents cannot prevail.

Fifth, the undersigned concludes that Plaintiff's argument concerning credibility determinations, [*see* Doc. 13 at 23-25], is also irrelevant to Plaintiff's disability application and is therefore harmless error. If an ALJ does not credit a claimant's testimony concerning pain, "he must articulate explicit and adequate reasons for doing

27

so." *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11ᵗʰ Cir. 1995). This does not mean, however, that the ALJ must explicitly conduct a credibility determination, but "the reasons for finding a lack of credibility must be clear enough that they are obvious to a reviewing court." *Castel v. Commissioner of Soc. Sec.*, 355 Fed. Appx. 260, 265 (11ᵗʰ Cir. Nov. 30, 2009) (citing *Foote*, 67 F.3d at 1562). Although the ALJ attempted to undertake an analysis of Plaintiff's credibility, [R15], the undersigned need not evaluate it in any detail. It is sufficient to find that such an error would be harmless because the focus of Plaintiff's August 2008 hearing testimony was her current condition. The undersigned is unaware of any attempt to limit the focus of Plaintiff's testimony to the period between April 2003 and June 2004. As such, Plaintiff's testimony about her pain and limitations has no relevance to her application for disability benefits, so the ALJ's credibility determination (or lack thereof) as to this irrelevant testimony is also immaterial to Plaintiff's case and therefore harmless.

Sixth, Plaintiff's arguments relating to the ALJ's treatment of Dr. Mbaezue's opinion are irrelevant to Plaintiff's disability claim. Plaintiff complains about the ALJ's interpretation of the May 2, 2007, opinion of Dr. Mbaezue concerning Plaintiff's limitations. [*See* Doc. 13 at 4-5]. The problem with these arguments is that the relevant

AO 72A
(Rev.8/8
2)

period for Plaintiff's disability claim was between April 30, 2003, and June 30, 2004, while Dr. Mbaezue's opinion followed this period by three years.

Courts have concluded that an opinion, even one from a treating source, merits no weight when it does not relate back to the relevant period. *See Jamiah v. Astrue*, No. 1:09-cv-1761-AJB, 2010 WL 1997886, *21 (N.D. Ga. May 17, 2010) (citing *Homrighouse v. Astrue*, No. 5:08-cv-374, 2009 WL 3053705, *9 (M.D. Fla. Sept. 18, 2009), and *Lofgren v. Astrue*, No. 1:06-cv-143, 2008 WL 1323396, *1 (N.D. Fla. Apr. 4, 2008)).

The undersigned recognizes that Dr. Mbaezue treated Plaintiff during the period for which she sought disability. [*See* R412 (indicating at August 2008 hearing that Plaintiff was with Mbaezue (referred to as "Ambasway" in the transcript) for 8 years)]. However, there is no indication that Dr. Mbaezue's May 2007 opinion was meant to reflect Plaintiff's limitations between April 2003 and June 2004. [*See* R103-06]. As such, Plaintiff's complaint about the ALJ not giving this opinion proper weight is irrelevant to the disability claim.[14]

_____

[14]    There is only one way that Dr. Mbaezue's opinion is relevant to Plaintiff's appeal, namely that it was error for the ALJ to rely on it because it simply was not relevant to the disability claim. Plaintiff does not advance this argument.

29

Although Plaintiff's argument relating to the treating Dr. Mbaezue is irrelevant, Plaintiff's claim as to Dr. Orija has some merit.  Initially, the undersigned recognizes that Dr. Orija was not Plaintiff's treating physician during the relevant period because he did not begin treating Plaintiff until November 2005.  [*See* R135].  However, Dr. Orija's opinion states that the limitations listed on his July 10, 2006, form were at that severity for "3 yrs."  [*See* R134].  As such, it relates back to the relevant period and provides a retrospective opinion (albeit one on shaky grounds because it is unclear how Dr. Orija arrived at this finding or how the record evidence supports this conclusion).[15]

An ALJ must consider an opinion that is given after the relevant period when the retrospective opinion relates back to the relevant time period.  *See Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983) (joining Second and Seventh Circuits "that a treating physician's opinion is still entitled to significant weight notwithstanding that he did not treat the claimant until after the relevant determination date"); *King v. Astrue*, No. 3:09-cv-229, 2010 WL 1038476, *8 (M.D. Fla. Mar. 19, 2010); *see also Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003) *Wilkins v. Sec'y, Dep't of Health and Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (*en banc*) ("This court has

---

[15]     For instance, Dr. Hassinger who evaluated the medical records for the relevant period indicated that these records did not document limitations as severe as those claimed by Plaintiff.

recognized that a treating physician may properly offer a retrospective opinion on the past extent of an impairment."). Although there appears to be some dispute as to the extent of the weight given to a treating doctor's retrospective opinion, it is clear that the opinion is entitled to some weight. *Compare Homrighouse*, 2009 WL 3053705 at \*9 & n.38 ("[A]ny opinion [a treating doctor] may have had concerning Plaintiff's functional capacity during the relevant time period necessarily was speculative and, although relevant, certainly less probative than medical evidence generated closer in time to Plaintiff's date last insured."); *Rosenburg v. Comm'r of Soc. Sec.*, No. 6:07-cv-1510, 2008 WL 4186988, \*5 (M.D. Fla. Sept. 8, 2008) (rejecting argument that ALJ had to give retrospective opinion of treating doctor "significant weight" where good cause existed to reject it), *with Calhoun v. Astrue*, No. 3:07-cv-970, 2008 WL 5381919, \*5 (M.D. Fla. Dec. 23, 2008) ("The retrospective opinion of a treating physician should be given at least substantial or considerable weight, unless it is inconsistent with or not supported by contemporaneous medical evidence."); *Byam v. Barnhart*, 336 F.3d 172, 183 (2d Cir. 2003) (noting that a retrospective diagnosis is "not conclusive" but "it is entitled to controlling weight unless it is contradicted by other medical evidence"); *Wilkins v. Sec'y, Dept. of Health and Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (stating that retrospective opinion of treating doctor was entitled to "great weight").

AO 72A
(Rev.8/8
2)

Given the apparent retrospective nature of Dr. Orija's opinion, the opinion was entitled to be given weight.  Although the ALJ appears to have accorded the opinion some weight, the Court agrees with Plaintiff's argument that the ALJ misrepresented Orija's opinion and therefore erred in weighing the opinion.  The ALJ recognized that Dr. Orija believed that Plaintiff could not perform full time work, but added that "the limitations that [Orija] assigned to the claimant contradict the conclusions of total disability."  [R15].  This statement concerning Dr. Orija's assessment of Plaintiff's limitations is simply false and therefore not supported by substantial evidence.  At the administrative hearing, Plaintiff's counsel questioned the VE about a hypothetical person with the limitations found by Dr. Orija.  [*Compare* R132-34 *with* R433].  The VE determined that such a person could not work.  [R433].  It is unclear how the ALJ came to the opposite conclusion.  This is error that requires the case be remanded.  On remand, the Commission must re-evaluate Dr. Orija's opinion.

Besides Plaintiff's argument about Dr. Orija having some merit, the Court concludes that Plaintiff's arguments relating to SSR 82-62 likewise have some merit. [Doc. 15 at 19-22].  Plaintiff contends that the ALJ had to make specific findings concerning the physical demands of the past work positions and that his characterization of the jobs as sedentary, light, and heavy were insufficient under *Nelms*

32

*v. Bowen*, 803 F.2d 1164, 1165 (11ᵗʰ Cir. 1986).  [*Id.* at 20].  Plaintiff also contends that

the ALJ had to make more specific findings as to the mental demands of the job.[16]  [*Id.*

at 20-21].  Further, Plaintiff asserts that the cursory description of her past work was

insufficient under SSR 82-62 and Eleventh Circuit case law.  [*Id.* at 21 (citing *Lucas*

*v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11ᵗʰ Cir. 1990)].  Finally, Plaintiff contends that

the ALJ never determined if Plaintiff could perform the work as she actually performed

it.  [*Id.* at 22].  The Commissioner argues that substantial evidence supports a finding

that Plaintiff could return to the clerk position because Plaintiff identified the

requirements for the position, the VE described the job generally and as performed by

Plaintiff, and Plaintiff's RFC allowed her to return to the job.  [Doc. 17 at 20].

    "Any case requiring consideration of [past relevant work] will contain enough

information on past work to permit a decision as to the individual's ability to return to

such past work (or to do other work)."  SSR 82-62.  This work experience must be

considered "carefully."  *Id.*  As a result, the past relevant work determination "must be

developed and explained fully."  *Id.*  Consistent with this policy, the Commissioner

---

    [16]    Plaintiff's brief cites to her diagnosis of adjustment disorder and anxious
mood as being one basis for needing more details about the past work.  [Doc. 15 at 21].
The medical records of these problems are from a period after Plaintiff's insured
status.  [*See* Doc. 15 at 18 (citing 2006 and 2007 medical records)].  Also, Plaintiff
abandoned her claim relating to these mental disorders at the oral argument hearing.

requires that the ALJ make the following findings when an individual is found to perform past relevant work:

> 1.  A finding of fact as to the individual's RFC.
>
> 2.  A finding of fact as to the physical and mental demands of the past job/occupation.
>
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62.

The Court concludes that the ALJ's decision that Plaintiff could perform her past relevant work was not "carefully" conceived. Although the ALJ's decision gave lip service to the three findings required under SSR 82-62, [R16], the Court finds that the ALJ's conclusion is flawed. First, the ALJ appears to find that Plaintiff could perform her past work as a custodian, which was classified as heavy work, despite the ALJ limiting Plaintiff to light work. [*See* R14, 16].

Second, the following statement in the ALJ's past relevant work finding is unsupported by the record:

> In response to hypothetical questioning, based upon the aforementioned [RFC], the vocational expert testified that a person would be able to perform the claimant's past relevant work.

34

[R16].  This statement is erroneous because the VE never was questioned about a hypothetical person with Plaintiff's RFC and the VE also never found that a person could work based on the two hypothetical questions posed to him at the hearing.  [*See* R432-33].  Although VE testimony is not required at Step four,[17] the combination of misstating the VE testimony and finding that Plaintiff could perform past work as a custodian undermines the ALJ's past relevant work finding.  The finding was neither "careful" nor "developed and explained fully."  As a result, the ALJ erred in his past relevant work determination, so the case must be remanded.

Finally, although the undersigned does not agree with every assertion put forth by Plaintiff in support of her RFC argument, [Doc. 15 at 7-11], the Court finds that the Commissioner must re-evaluate the RFC.  The relevant period in this case was the period when Plaintiff was insured, *i.e.*, April 20, 2003, through June 30, 2004.  The ALJ's decision strayed far from this time period in crafting the RFC as demonstrated by the citation to and reliance on evidence well after Plaintiff's date last insured of June 30, 2004.  As such, the RFC must be re-evaluated on remand.

---

[17]     *See Hennes v. Comm'r of Soc. Sec. Admin.*, 130 Fed. Appx. 343, 346 (11th Cir. May 3, 2005) (citing *Lucas v. Sullivan*, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990)).

35

As discussed above, the ALJ erred in his treatment of Dr. Orija's opinion and in his past relevant work finding.  Accordingly, the Court **REVERSES AND REMANDS** the Commissioner's decision for further proceedings consistent with this opinion.  The Court **EMPHASIZES** that on remand, the parties are to consider only the evidence relevant for the period between April 20, 2003, and June 30, 2004.[18]

## VII.   CONCLUSION

For the reasons discussed above, the Court **REVERSES** the final decision of the Commissioner and **REMANDS** Plaintiff's case to the Commissioner.  On remand, the parties **SHALL** limit their consideration to evidence that is relevant for the period when Plaintiff was insured, *i.e.*, April 20, 2003, through June 30, 2004.  The Clerk is **DIRECTED** to enter judgment in Plaintiff's favor.

---

[18]     This is not to limit the parties from considering evidence beyond this time frame.  The parties **MAY** consider evidence both before and after the insured period **BUT ONLY IF** it is relevant to the issue raised by Plaintiff's application for disability benefits under Title II of the Social Security Act, namely whether Plaintiff was disabled during the period between April 20, 2003, and June 30, 2004.

36

**IT IS SO ORDERED AND DIRECTED**, this the 20th day of September, 2010.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/8
2)